Filed 1/28/25  P. v. Singh CA5
Opinion following transfer from Supreme Court

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>HARMAN PREET SINGH,<br><br>    Defendant and Appellant. | Consolidated Cases Nos.<br>F082580 & F082584<br><br>(Super. Ct. Nos. MCR060145,<br>MCR060560)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Madera County.  Dale J. Blea, Judge.

Joshua G. Wilson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell and Kimberley A. Donohue, Assistant Attorneys General, Julie A. Hokans, Christopher J. Rench, Doris A. Calandra, and R. Todd Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P. J., Detjen, J. and Meehan, J.

This matter is before us on transfer from our Supreme Court for reconsideration in light of *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*) and *Erlinger v. United States* (2024) 602 U.S. 821 (*Erlinger*), which settled a division among Courts of Appeal on the appropriate standard for assessing prejudice in the context of noncompliance with the requirements of Penal Code section 1170, subdivision (b)(1), (2), and (3)[1] as modified by Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill No. 567). In accordance with the direction of the Supreme Court, we have vacated our earlier decision and permitted supplemental briefing from the parties.

Defendant Harman Preet Singh pled guilty to arson and making criminal threats, charged in two separate cases. In both cases, he was granted probation, was found to have violated probation, and his probation was revoked. Upon revocation of probation, the upper term was imposed on the arson count. On appeal, he challenges the trial court's conclusion he violated a condition of probation, resulting in a revocation of that probation. Defendant also challenges the sentence imposed as violating section 1170, subdivision (b). The People contend that the trial court correctly determined that defendant violated a condition of probation but agree that defendant is entitled to resentencing in compliance with section 1170, subdivision (b). We vacate defendant's sentence and remand for resentencing. In all other respects, we affirm.

## PROCEDURAL SUMMARY

This opinion addresses two separate appeals from cases brought against defendant in the Madera County Superior Court cases Nos. MCR060145 and MCR060560. On this court's own motion, the appeals were consolidated. On August 20, 2018, the Madera County District Attorney filed a complaint against defendant in case No. MCR060145, alleging defendant committed arson (§ 451, subd. (d); count 1) and attempted to set fire to a structure (§ 455; count 2). On September 28, 2018, the Madera County District

---

[1] All statutory references are to the Penal Code unless otherwise indicated.

Attorney filed a second amended complaint against defendant in case No. MCR060560, alleging he made a criminal threat that was likely to result in death or great bodily injury to his mother (§ 422, subd. (a); count 1), made a criminal threat that was likely to result in death or great bodily injury to his father (§ 422, subd. (a); count 2), and committed misdemeanor battery against his mother (§ 242; count 3).

On April 22, 2019, defendant pled guilty to count 1 in case No. MCR060560. During the same hearing, defendant also pled guilty to count 1 in case No. MCR060145. The trial court then suspended imposition of sentence and placed defendant on probation for a period of five years for both cases Nos. MCR060145 and MCR060560, and dismissed the remaining counts alleged against him. At the time probation was granted, various conditions were imposed, including requirements that defendant attend all future court appearances and "[r]eport monthly or as directed by the Probation Officer."

On September 29, 2019, a petition to revoke defendant's probation was filed in case No. MCR060560. A similar petition was filed in case No. MCR060145 on September 30, 2019. While both petitions stated defendant failed to "[r]eport monthly or as directed by the Probation Officer," the petition in case No. MCR060145 also included the failure to register as required by section 457.1 (requiring registration after a conviction for arson). On August 21, 2020, defendant admitted the violations listed in both petitions. On September 21, 2020, the trial court ordered defendant to serve 120 days in jail in case No. MCR060145, then reinstated the same terms and conditions of probation in both cases as set out earlier.

New petitions to revoke probation were filed on November 13, 2020, alleging defendant violated two conditions of probation in each case.[2] Specifically, both petitions

---

[2] On the same date, defendant was also found to have violated probation in Madera County Superior Court case No. MCR066207 and it revoked defendant's probation. He was ordered confined to jail and granted credit for time served for the full duration of the ordered confinement. Our record does not contain information regarding what offenses were charged in that case nor does it contain a petition to revoke that grant

alleged defendant failed to "[o]bey all laws, federal, state and local," and did not "[r]eport monthly or as directed by the Probation Officer." Following a contested hearing, defendant was found to have violated the probation condition requiring him to report to his probation officer as ordered.

On March 24, 2021, the trial court revoked defendant's probation and sentenced him to three years (the upper term) on count 1 in case No. MCR060145 and designated this the principal term. The trial court then imposed a consecutive term of eight months (one-third the middle term of two years) for count 1 in case No. MCR060560,[3] for a total prison term of three years eight months.

On the same date, defendant filed a notice of appeal as to both cases.

On September 6, 2022, we issued an opinion affirming the judgment and directing the trial court to issue an amended abstract of judgment.

Defendant's petition for review was granted and, on December 11, 2024, our Supreme Court transferred the matter with directions for us to vacate our decision and reconsider in light of *Lynch*, *supra*, 16 Cal.5th 730, and *Erlinger*, *supra*, 602 U.S. 821.

We afforded the parties an opportunity to submit supplemental briefing and vacated our prior decision.

---

of probation. However, our record reflects that defendant pled guilty to misdemeanor vandalism in violation of section 594 and was granted misdemeanor probation for a term of three years.

[3] The trial court indicated it imposed a sentence on count 2 of case No. MCR060560. However, defendant pled guilty to count 1 in case No. MCR060560 and count 2 was dismissed. Both counts alleged a violation of section 422. Other than being imposed on the wrong count, the sentence imposed was consistent with the plea agreement. The trial court mistakenly imposed a sentence on count 2 that should have been imposed on count 1. Because we vacate defendant's sentence and remand the matter for resentencing, we note the error for the benefit of the trial court rather than correcting the error.

4.

**Case No. MCR060145**

On August 17, 2017, Madera Police Officer Kellom was dispatched to assist "Cal Fire" (Department of Forestry and Fire Protection) personnel who were fighting a fire near a home. The individual who was seen setting the fire on surveillance footage returned to the scene while the firefighters were there. The firefighters pointed out this individual, who was later identified as defendant, to Kellom. Kellom reported defendant smelled of alcohol, seemed agitated, and tried to leave. Defendant was detained and placed in the back of Kellom's vehicle. A lighter was eventually found in defendant's front pocket.

**Case No. MCR060560**

On September 23, 2018, Madera Police Officer Garcia was dispatched to a home where he encountered defendant's brother. Defendant's brother reported defendant threatened to assault their mother after getting angry. His brother also stated defendant grabbed an oxygen tank and threatened to "blow up the house and kill his family."

**Probation Revocation Proceedings**

The revocation hearings for both cases Nos. MCR060145 and MCR060560 were held concurrently on December 4, 2020. During the hearing, Madera County Probation Officer Magallanes testified defendant was required to report to the probation department at least monthly, and that he was specifically instructed to report on November 3, 2020. Defendant did not meet with Magallanes on November 3. Magallanes also determined there were no records showing defendant met with anyone else in the probation department on November 3. Magallanes testified that in the past defendant kept some appointments, but not all.

---

[4] The specific facts underlying the charges in our factual summary are found in the probation reports.

Defendant testified in his own behalf and admitted knowing he had an appointment with probation on November 3, 2020. Defendant testified he called the probation department on November 3, and that it was "on [his] phone history." Defendant claimed he was unable to reach anyone in the office because no one picked up the phone. During his testimony, defendant mentioned he had been arrested, but provided no specific evidence verifying this fact. On cross-examination, defendant admitted that his attempt to call probation did not occur until two to three days after November 3, 2020.

At the conclusion of the hearing, the trial court found defendant "violated the terms of his probation in failing to contact [the probation department] on the date specified," and that this violation applied to both cases.

## DISCUSSION

### I.    The Revocation of Probation

Defendant argues the revocation of his probation was improper because the trial court permitted the People to prove his state of mind to a lesser standard than that required by case law. Specifically, defendant contends the trial court used a strict liability test rather than one considering whether his violation of a condition of probation was "willful." Both below and on appeal, defendant appears to suggest the violation of the probation condition was "negligent" rather than "willful." We do not agree with defendant's characterization of the case law on this issue or the distinctions he is attempting to draw.

When an individual is suspected of violating terms or conditions of their probation, they may be rearrested and subject to a hearing at which the trial court considers whether to revoke probation and impose a sentence. (§ 1203.2.) The prosecution has the burden of proving the grounds supporting revocation by a preponderance of the evidence. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 447.) Case law has held a decision to revoke probation can be supported by the conclusion it serves the " 'interests of justice.' " (*People v. Galvan* (2007) 155 Cal.App.4th 978, 981.) While

6.

the facts supporting revocation may be proven by a preponderance of the evidence, "the evidence must support a conclusion the probationer's conduct constituted a willful violation of the terms and conditions of probation." (*Id*. at p. 982.)

Ultimately, the evidence must show a defendant has not complied with the terms of probation, justifying the revocation of probation. (*People v. Urke* (2011) 197 Cal.App.4th 766, 772 (*Urke*).)

> " 'Probation revocation proceedings are not a part of a criminal prosecution, and the trial court has broad discretion in determining whether the probationer has violated probation.' [Citation.] [¶] . . . [A]nd great deference is accorded the trial court's decision, bearing in mind that '[p]robation is not a matter of right but an act of clemency, the granting and revocation of which are entirely within the sound discretion of the trial court. [Citations.]' " (*Urke*, *supra*, 197 Cal.App.4th at pp. 772−773.)

The discretion to revoke probation is analogous to a court's power to grant probation, and should not be disturbed absent abuse or some form of arbitrary action. (*Urke*, *supra*, 197 Cal.App.4th at p. 773.) We therefore review the trial court's decision to revoke probation for an abuse of discretion. (*People v. Butcher* (2016) 247 Cal.App.4th 310, 318.) However, the trial court's factual findings will be reviewed for substantial evidence, and we will not reweigh conflicting evidence or determine credibility on appeal. (*Ibid*.; see *People v. Whisenhunt* (2008) 44 Cal.4th 174, 200.)

Magallanes testified defendant had been informed when he was released from jail in October 2020, to report to his probation officer on November 3, 2020. Defendant then failed to meet with Magallanes on November 3. Magallanes also had no record showing defendant attempted to reach her by phone on or around November 3. Magallanes later testified that this was not the first time defendant failed to appear for an appointment on a designated day.[5]

---

[5] In September 2020, defendant faced the risk of having his probation revoked and not reinstated when he failed to report for a meeting with probation. Instead, the trial court ordered defendant to serve 120 days in jail, then reinstated probation.

In his own testimony, defendant admitted missing the November 3, 2020 appointment. Defendant claimed he was arrested, but provided no details about that arrest. Defendant then testified he tried to call his probation officer, but that no one picked up the phone. Later in his testimony, defendant acknowledged his attempt to reach his probation officer was not until two to three days after his missed appointment.

Defendant's primary contention is that his failure to appear for the appointment was not "willful" and cannot support the revocation of his probation. Defendant relies heavily on the opinion in *Galvan* to make this point. This reliance on *Galvan* is misplaced, however. In *Galvan*, the appellant failed to appear for an appointment with his probation officer because he had been arrested and deported to Mexico. (*People v. Galvan*, *supra*, 155 Cal.App.4th at p. 981.) The court concluded this failure to report was not willful. (*Id.* at p. 985.)

Defendant's reliance on this court's decision in *People v. Zaring* (1992) 8 Cal.App.4th 362, is also misplaced. In *Zaring*, the defendant was 22 minutes late to court due to an unforeseen problem with childcare. (*Id.* at p. 379.) The trial court revoked probation. (*Ibid.*) This court held the failure to report was not "the result of irresponsibility, contumacious behavior or disrespect for the orders and expectations of the court," nor was it a willful violation of the relevant condition of probation. (*Ibid*.)

In an effort to analogize his facts to those stated in *Galvan* and *Zaring*, defendant points to his testimony that he was arrested. Defendant specifically testified:

> "I got arrested. Like, I knew I missed the appointment. I was going to call them back. But it was just only two days in between, like a couple of days, and this incident happened."

This was the only mention of an arrest in the record. No document was placed into evidence memorializing the arrest, and no further testimony was provided. As a result, the trial court may have been skeptical about the authenticity of this claim.

The burden of demonstrating a trial court abused its discretion rests squarely on the defendant. (*Urke*, *supra*, 197 Cal.App.4th at p. 773.) An appellate court should interfere with a trial court's exercise of discretion on denying or revoking probation only in extreme cases. (*Ibid*.) " 'Many . . . circumstances not warranting a conviction may fully justify a court in revoking probation granted on a prior offense.' " (*Ibid*.)

We conclude the trial court's finding that defendant willfully violated a condition of probation when he failed to appear for his November 3, 2020 appointment with his probation officer, is supported by substantial evidence. We, therefore, find no abuse of discretion.

## II. Senate Bill No. 567

At the time defendant was sentenced, section 1170 provided the choice between the lower, middle, and upper term "shall rest within the sound discretion of the court," who determines which term "best serves the interests of justice." (§ 1170, former subd. (b).) On March 24, 2021, applying the law that existed at the time, the trial court found true four circumstances in aggravation and imposed an upper-term sentence on count 1 in case No. MCR060145. On January 1, 2022, amendments to section 1170 made by Senate Bill No. 567 went into effect. Defendant contends his sentence is invalid following those amendments. The People concede that, in light of *Lynch*, defendant's sentence must be vacated and the matter must be remanded for resentencing. Specifically, they acknowledge none of the circumstances in aggravation were proved in compliance with section 1170, subdivision (b), and the record does not provide a clear indication that the trial court would have exercised its discretion to impose the upper term in light of the alteration of the trial court's sentencing discretion—to wit, the presumptive middle term—resulting from Senate Bill No. 567. (*Lynch*, *supra*, 16 Cal.5th at pp. 771, 773.) We agree.

9.

## A. Background

When imposing the sentence after revoking probation, the trial court chose the upper term for the violation of section 451, subdivision (d) in case No. MCR060145, stating:

> "The Court selected the aggravated term based on the facts that [1] [defendant's] prior convictions as an adult are numerous and increasing in seriousness. [2] He was on probation at the time that he committed the offense. [3] His performance on probation prior to the conviction was unsatisfactory, and [4] his performance on probation following the conviction was likewise unsatisfactory."

The trial court also considered defendant's "mental health issues as a factor [in] mitigation, but even in considering that as a factor in mitigation, the Court f[ound] that the aggravating factors justif[ied] an imposition of the aggravated term."

## B. Compliance with Section 1170, Subdivision (b), as Modified by Senate Bill No. 567

Effective January 1, 2022, Senate Bill No. 567 amended section 1170, subdivision (b). (Stats. 2021, ch. 731, § 1.3.) Section 1170, subdivision (b)(2) now provides, "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." As an exception to the general rule, the court may consider the fact of the defendant's prior convictions based on a certified record of conviction without it having been stipulated to by the defendant or found true beyond a reasonable doubt at trial by a jury or the judge in a court trial. (§ 1170, subd. (b)(3); see *Erlinger*, *supra*, 602 U.S. at p. 838 ["[A] judge may 'do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of.' "].)

The parties agree that none of the aggravating circumstances were proved to a jury or admitted in full by defendant. The People also acknowledge that no certified records of prior convictions were admitted into evidence and the trial court's reliance on a probation officer's report to find true prior convictions does not meet the requirements of section 1170, subdivision (b)(3).

In sum, none of the aggravating circumstances were established as required by section 1170, subdivision (b).

## C. Harmless Error

### 1. Legal Standard

In *Lynch*, our Supreme Court held that where a trial court employed a former version of section 1170, subdivision (b), and relied on facts not proved in compliance with section 1170, subdivision (b) to impose the upper term, the sentence must be vacated and the matter remanded unless we conclude beyond a reasonable doubt that the jury would necessarily have found the facts underlying *all* circumstances in aggravation relied upon by the trial court true beyond a reasonable doubt. (*Lynch*, *supra*, 16 Cal.5th at pp. 742–743, 761.) "In making this determination, we may ' "examine[] what the jury necessarily did find and ask[] whether it would be impossible, on the evidence, for the jury to find that without also finding the missing fact as well." [Citation.] . . .' [Citation.] We may also find the omission harmless if we can conclude beyond a reasonable doubt 'that the omitted [fact] was uncontested and supported by overwhelming evidence.' " (*Id.* at p. 775, italics omitted, brackets in original.) Further, because Senate Bill No. 567 "altered the scope of the trial court's discretion," for sentences imposed under the former version of section 1170, subdivision (b), "the record must clearly indicate that the court would have found an upper term justified had it been aware of its more limited discretion." (*Lynch*, at p. 743; see *id.* at p. 777 [providing examples of the "kind of definitive statements" that our Supreme Court has found to clearly indicate a trial court "would not impose a lesser sentence under any circumstances"].)

11.

### 2. Analysis

The People argue that "the lack of certified records of conviction . . . was likely harmless beyond a reasonable doubt . . . ." However, because the People concede, and we agree, that the record provides no clear indication that the trial court would have imposed the same sentence in light of the new presumptive middle term, we need not determine whether the failure to establish all four aggravating circumstances in compliance with section 1170, subdivision (b) was harmless beyond a reasonable doubt. In sentencing defendant, the trial court listed the circumstances in aggravation and mitigation and commented "the aggravating factors justif[ied] an imposition of the aggravated term." The trial court's statement was not the "kind of definitive statement[] that [our Supreme Court] ha[s] found to clearly indicate it would not impose a lesser sentence under any circumstances." (*Lynch*, *supra*, 16 Cal.5th at p. 777.) The *Lynch* court provided two examples of such statements: first, where the trial court found the defendant was " ' "deserving [of] the ultimate sentence of death," ' [the] trial court observed that the defendant was ' "the worst of the worst," ' that he ' "show[ed] absolutely no remorse" ' and that ' "[i]t's as if he has no soul" ' "; and second, "where 'the sentencing court announces that it is aware of forthcoming legislation and then explains how it would exercise its discretion under that legislation.' " (*Ibid.*, citing *People v. Flores* (2020) 9 Cal.5th 371, 432, and *People v. Salazar* (2023) 15 Cal.5th 416, 431.) Neither is the case here. The trial court's comment that the upper term was justified under the prior standard does not provide a clear indication that the trial court would not impose a lesser term in light of the new middle-term presumption. (See *Lynch*, at p. 777; *Salazar*, at p. 431.) For this reason, defendant's sentence must be vacated and the matter must be remanded for full resentencing.[6]

---

[6] " ' "The proper remedy for this type of failure of proof—where . . . [aggravating facts] were 'never tried' to the jury—is to remand and give the People an opportunity to retry" ' the aggravating facts." (*Lynch*, *supra*, 16 Cal.5th at p. 776, brackets in original.)

## DISPOSITION

Defendant's sentence is vacated and the matter is remanded for full resentencing in conformity with section 1170, subdivision (b). The People may elect to retry the aggravating facts on remand. In all other respects, the judgment is affirmed.